**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | <u>FOR PUBLICATION</u> |
| NANOBEAK BIOTECH INC.*,* | Chapter 7 |
| Debtor. | Case No. 21-11600 (MG) |
| YANN GERON, as Chapter 7 Trustee of the Estate of Nanobeak Biotech Inc., | |
| Plaintiff, | Adv. Pro. Case No. 23-01172 (MG) |
| v. | |
| CENTRAL PARK REALTY HOLDING CORP., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER GRANTING IN
PART CENTRAL PARK REALTY HOLDING'S MOTION TO DISMISS**

*A P P E A R A N C E S :*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for Plaintiff Yann Geron*
200 West 41st Street, 17th Floor
New York, New York 10036
By:     Fred Stevens, Esq.
        Lauren C. Kiss, Esq.
        Christopher J. Reilly, Esq.

REINHARDT SAVIC FOLEY LLP
*Attorneys for Defendant Central Park Realty Holding Corp.*
200 Liberty Street, 27th Floor
New York, New York 10281
By:     Brian L. Grossman, Esq.
        Stephan Savic, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. # 6) of defendant Central Park Realty Holding Corp. ("CPRH" or "Defendant") to dismiss the above-captioned case for failure to state a claim, supported by the declaration of Brian L. Grossman ("Grossman Declaration"). The complaint (the "Complaint," ECF Doc. # 1) was filed by the Yann Geron (the "Trustee" or "Plaintiff") in his capacity as the Chapter 7 Trustee for the estate of Nanobeak BioTech Inc. ("Nanobeak" or "Debtor") and alleges seven causes of action, including for fraudulent conveyance and unjust enrichment, against CPRH. The Trustee filed an opposition to the Motion (the "Objection," ECF Doc. # 12). CPRH filed a reply to the Objection ("Reply," ECF Doc. # 14). The Court held a hearing on the Motion (the "Hearing") on December 19, 2023.

For the reasons explained below, the Court **GRANTS** the Motion without prejudice with respect to Counts I, II, and III for constructive fraudulent transfers because the Plaintiff has failed to plead insolvency, a necessary condition to a constructive fraudulent transfer claim. The Court also **GRANTS** the Motion without prejudice with respect to Count IV for actual fraudulent transfer and Count V for attorneys' fees because the Trustee failed to plead fraudulent intent with respect to the Transfers (as defined below). The Court **DENIES** the Motion with respect to Count VI for unjust enrichment. The pleadings do not show whether Barbara occupied the Rental Apartment for the full term for which the Debtor paid in advance. Lastly, the Court **GRANTS** the Motion with respect to Count VII, for attorneys' fees and prejudgment interest, because it is not a standalone cause of action.

# I.   <u>BACKGROUND</u>

The Complaint alleges claims for fraudulent conveyances and unjust enrichment under the Bankruptcy Code and NY Debtor and Creditor Law ("NYDCL")[1] against the CPRH, totaling $100,730.00, and seeks attorneys' fees and prejudgment interest (Complaint at 2; *id.* ¶ 48). The basis for the claim is that the Debtor's former CEO, James Barbera ("Barbera"), caused the Debtor to make transfers to CPRH to satisfy Barbera's personal rent obligations. (*Id.* ¶ 50.)

CPRH disputes its liability on the grounds that (1) CPRH was an innocent party to a "run of the mill transaction" providing "a rental apartment in exchange for fair value," and had no knowledge or involvement in any "attempted hindrance or delay in paying the Debtor's creditors" (Motion at 1–2); (2) that the Trustee is attempting multiple recoveries via criminal restitution and another pending adversary proceeding against Barbera (*id.* at 2–3); and (3) that Barbera's personal expenses were expressly forgiven and ratified by Debtor pursuant to a purported resolution in the minutes from a Nanobeak board meeting (*id.* at 3).

## A.  Nanobeak's Bankruptcy

Nanobeak, a biotechnology company purporting to develop technology focused on detection of early-stage lung cancer, filed a voluntary petition for chapter 7 relief on September 10, 2021 (the "Petition Date"). (Complaint ¶¶ 4, 11.) Barbera established Nanobeak in 2009 and served as its CEO from then until his resignation in October 2019. (*Id.* ¶ 11)

On the Petition Date, Yann Geron was appointed interim trustee of the Debtor's estate. (*Id.* ¶ 2.) On October 8, 2021, he became the permanent Trustee. (*Id.*)

---

[1]    In 2019, New York enacted the Uniform Voidable Transactions Act (the "UVTA"). The UVTA amended and repealed certain portions of the NYDCL, including the sections at issue, but did not apply to transfers made before it became effective in April 2020. Citations to the NYDCL are to the version effective when the Transfers were made.

### B. Barbera's Actions

#### 1. The Fraud

During his tenure as CEO, Barbera "used the Debtor as his own personal piggy bank" to the tune of several million dollars. (*Id.* at 2.) Among other things, Barbera caused the Debtor to pay various rental, mortgage, and maintenance payments for several properties, including $100,730.00 in rent to CPRH. (*Id.* ¶¶ 20, 48.)

On February 17, 2022, Barbera was found guilty of conspiracy and fraud, for which he was sentenced to 48 months in prison and ordered to pay $7,026,150 to the United States and restitution (requested in the amount of $6,926,150) to his victims (*Id.* ¶¶ 25, 30, 36.) He has appealed. (*Id.* ¶ 37.)

#### 2. The Apartment Lease and Payments Therefor

Barbera and the CPRH entered into a lease (the "Lease") as of March 27, 2017, whereby CPRH agreed to lease an apartment (the "Rental Apartment") to Barbera for two years beginning on May 15, 2017 with monthly rent of $7,000 for the first year and $7,210 for the second year. (*Id.* ¶ 47.) The Lease required Barbera to deliver to CPRH certified checks for the first month's rent ($7,000), last twelve months' rent ($86,520) and one month's security deposit ($7,210). (*Id.*)

Barbera caused Nanobeak to make the payments due under the Lease. Specifically, the Trustee has identified the following withdrawals (the "Withdrawals") from Nanobeak's JP Morgan Chase account:

| Transferor | Date | Amount |
|---|---|---|
| Nanobeak, Inc. | March 28, 2017 | $3,500.00 |
| Nanobeak, Inc. | March 29, 2017 | $97,230.00[2] |

(*Id.*)

The funds from the Withdrawals were used for the following cashier's checks (the "Cashier's Checks," and the transfers to CPRH summing to $100,730.00, the "Transfers"):

| Transferee | Date of Cashier's Check | Payment Clear Date for Cashier's Check | Amount |
|---|---|---|---|
| Central Park Realty Holding Corp. | March 28, 2017 | June 24, 2017 | $3,500.00 |
| Central Park Realty Holding Corp. | March 29, 2017 | June 12, 2017 | $7,000.00 |
| Central Park Realty Holding Corp. | March 29, 2017 | June 12, 2017 | $3,710.00 |
| Central Park Realty Holding Corp. | March 29, 2017 | June 12, 2017 | $86,520.00 |
| **Total:** | | | **$100,730.00** |

(*Id.*)

The Trustee now seeks to avoid the Transfers to CPRH and recover attorney's fees and interest.

### C. The Adversary Proceeding

#### 1. The Complaint

The Complaint alleges seven causes of action, including for fraudulent transfers and unjust enrichment under the Bankruptcy Code and NYDCL, and seeks attorneys' fees and prejudgment interest. The causes of action are as follows:

I.   **Fraudulent Conveyance by Insolvent** under Bankruptcy Code §§ 544(b), 550 and NYDCL § 273. (*Id.* ¶¶ 51–58.)

II.  **Fraudulent Conveyance with Unreasonably Small Capital** under Bankruptcy Code §§ 544(b), 550 and NYDCL § 274. (*Id.* ¶¶ 59–66.)

III. **Fraudulent Conveyance by One Incurring Debts Beyond Ability to Pay** under Bankruptcy Code §§ 544(b), 550 and NYDCL § 275. (*Id.* ¶¶ 67–74.)

IV.  **Intentional Fraudulent Conveyance** under Bankruptcy Code §§ 544(b), 550 and NYDCL § 276. (*Id.* ¶¶ 75–84.)

V.   **Attorney's Fees** for Avoidance of Conveyance Made with Intent to Defraud under Bankruptcy Code §§ 544(b) and NYDCL § 276-a. (*Id.* ¶¶ 85–87.)

VI.     **Unjust Enrichment**.  (*Id.* ¶¶ 88–94.)

VII.    **Pre-Judgment Interest and Attorney's Fees** Bankruptcy Code § 550(a) and NY Civil
        Practice Law & Rules ("NYCPLR") §§ 5001, 5004.  (*Id.* ¶¶ 95–96.)

The Complaint extensively details Barbera's fraud and the resulting criminal and civil

litigation.  (*See id.* ¶¶ 11–45).

        2.  <u>The Motion to Dismiss</u>

CPRH disputes its liability on all causes of action and advances several arguments in

support.

*First*, CPRH argues that the Trustee is attempting multiple recoveries via criminal

restitution and another pending adversary proceeding against Barbera, and thus this proceeding

should be "terminated in its entirety or stayed pending the other proceeding."  (Motion at 2–3,

22.)

*Second*, CPRH disputes liability on the intentional fraudulent transfer claim (Count IV),

attorneys' fees for the intentional fraudulent transfer claim (Count V) and the unjust enrichment

claim (Count VI) because it was an "innocent third party" that simply "rent[ed] out an apartment

and accept[ed] rent payments for the same, without any knowledge of the allegation that Barbera

took funds from the Debtor without permission."  (*Id.* at 1–2.)  It argues that this, in combination

with an absence of any "badges of fraud," absolves it of any liability for an actual fraudulent

transfer claim.  (*Id.* at 18–19.)  Accordingly, CPRH argues, it should also not be liable for

attorneys' fees for an intentional fraudulent transfer claim.  (*Id.* at 20.)  Further, CPRH maintains

that it was not unjustly enriched because it "provided an apartment in exchange for rent," and it

would thus be "against good conscience and equity" to force disgorgement.  (*Id.* at 21.)

*Third*, CPRH contests liability for the constructive fraudulent transfer claims based on (1)

inadequate pleading and (2) the Purported Board Resolution (as defined below).  It argues that

the Trustee has failed to adequately plead constructive fraudulent transfers because the

Complaint does not allege facts supporting that (i) the Debtor was insolvent at the time of the

Transfers (*id.* at 14–15); (ii) the Transfers left the Debtor with insufficiently small capital (*id.* at

16), or (3) the Debtor was incurring debts beyond its ability to pay.  (*Id.* at 18.)  Because these

are each, respectively, necessary elements of Counts I, II, and III for constructive fraud, CPRH

argues that those counts should be dismissed.  (*Id.*)  Moreover, CPRH submits that Barbera's

personal expenses were expressly "*forgiven* and *ratified* by the [Debtor]" pursuant to a resolution

in minutes from a Nanobeak board meeting[2] (the "Purported Board Resolution," Grossman

Declaration Ex. A).  (*Id.* at 3.)  Because lack of fair consideration is a necessary element of the

constructive fraudulent transfer claims, and CPRH argues the Purported Board Resolution

amounted to a "three-party contract" that constituted fair consideration paid to the Debtor, CPRH

would thus not be liable on those counts.  (*Id.* at 3, 14)

*Fourth*, CPRH argues that Count VII, for attorneys' fees and interest, must be dismissed

because (1) none of the statutes that are the purported basis for the claim even mention attorneys'

fees, and (2) that while CPLRs § 5001 and CPLR § 5004 provide for interest, neither are

standalone causes of action.  (*Id.* at 22)

---

[2]     According to CPRH, in December 2019 (after Barbera's resignation), Nanobeak held a board meeting to discuss the allegations that Barbera had been "using [Debtor] funds inappropriately for personal expenses."  (Motion at 8, citing Purported Board Resolution.)  During that meeting, Barbera allegedly admitted to using the Debtor's funds and "explained to the Board that although he may have been using [the Debtor's] funds for personal expenses, this was not inappropriate in light of the fact that [he] was never compensated as a regular employee of the [Debtor] for the last seven years."  (*Id.*)  According to CPRH, following a discussion and vote (from which Barbera abstained) the Board unanimously approved a resolution (1) crediting Barbera for $2.1 million against any personal expenses that the Debtor had made on behalf of Barbera; and (2) that following an investigation into the amounts expended by the Debtor on behalf of Barbera, if the amounts expended by Barbera exceeded the $2.1 million, Barbera would release shares back to the Debtor or compensate the Debtor by reducing his salary.  (*Id.*; *id* at 8–9.)

3.  <u>The Objection</u>

The Trustee disputes each of CPRH's contentions (except its argument that NYCPLR §§ 5001 and 5004 provide for attorneys' fees).

*First*, the Trustee disputes the "authenticity, accuracy and relevanc[e]" of the Purported Board Resolution, and argues that it cannot be considered at the motion to dismiss stage, as it is not incorporated into or relied on in the Complaint, nor does it satisfy any other factor for a document that may be considered at this stage.  (Objection at 3–4.)

*Second,* the Trustee argues that the fraudulent transfer claims survive, as does the claim for attorneys' fees on the intentional fraudulent transfer.  The Trustee argues that the *constructive* fraudulent transfer claims survive because it has pleaded a lack of fair consideration, and that Nanobeak's insolvency is a question of fact which the Court must accept as true at this stage. (*Id.* at 7–8.)  The Trustee argues that the *intentional* fraudulent transfer claims survive because the Complaint alleged several "badges of fraud," namely that no "plausible justification exists for the Debtor's payments to the Defendant," and again details Barbera's spending of the Debtor's funds on personal expenses that ultimately led to his conviction.  (*Id.* at 11–13.)  The Trustee "recognizes that attorneys' fees are only recoverable for the intentional fraudulent conveyance under NYDCL § 276-a if the Trustee establishes the Defendant's actual fraudulent intent at trial," but argues that it would be premature to dismiss the claim at this stage, before parties have engaged in discovery.  (*Id.* at 14.)

*Third,* the Trustee argues that the unjust enrichment claim survives because "privity is not required," CPRH accepted the Transfers "knowing that it was providing the Rental Apartment to Barbera and not Debtor," and "allowing the Defendant to retain the benefits of the Transfers

would be unjust under these circumstances when the Debtor never had any contractual or legal obligation to make the Transfers." (*Id.* at 15–16.)

*Fourth,* the Trustee argues that courts apply CPLR § 5001(a) and CPLR § 5004 to award interest for fraudulent conveyances. (*Id.* at 17.)

*Lastly,* the Trustee argues that "[no] double recovery has occurred or will ever occur." (*Id.* at 20.) Though the Trustee is pursuing claims against Barbera, no portion of the Transfers have been repaid to date, and Barbera's restitution payments will not begin until 2028 at the earliest; until paid, the Trustee may look to other parties to recover the same loss. (*Id*. at 19–20.)

### 4. <u>The Reply</u>

CPRH argues that the Purported Board Resolution, which undercuts all of the Trustee's claims, is admissible because the Plaintiff's complaint "stands or falls" on it, regardless of whether it was included in the Complaint. (Reply at 2, citing *Madhu v. Socure Inc.*, No. 1:22-CV-682-GHW, 2023 WL 6214807, at *6 (S.D.N.Y. Sept. 22, 2023).) CPRH reiterates its other arguments for why the unjust enrichment and fraudulent transfer claims must be dismissed: namely, that (1) it was not unjustly enriched because it actually provided an apartment in exchange for market rent (*id.* at 8); (2) the intentional fraudulent transfer claim fails because the Trustee has not alleged bad faith *against it* (*id.* at 5); and (3) the constructive fraudulent transfer claims fails because the Trustee has not alleged insolvency (*id.* at 3). CPRH maintains that there is no "standalone cause of action" to collect interest, and that the Trustee has only cited cases indicating that a party "may" collect it. (*Id.* at 9.) Lastly, CPRH argues that there is still a "risk" of double recovery requiring dismissal. (*Id.* at 10.)

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  *See* FED. R. BANKR. P. 7012; FED. R. CIV. P. 12(b)(6).  The "court must accept a complaint's allegations as true," and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663–664 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  Further, when reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court's role in evaluating a motion to dismiss is to determine the legal feasibility of the complaint, not to weigh the evidence that may be offered to support it.  *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

In deciding a motion to dismiss, the Court accepts a complaint's factual allegations as true and must draw all reasonable inferences in favor of the plaintiff.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015).  Although the allegations must be taken as true, the complaint must contain more than just a formulaic recitation of the elements of a cause of action, and the court should "identify[] allegations that, because they are mere conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 664; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (stating that "bald assertions and conclusions of law will not suffice").  To survive a motion to dismiss for failure to state a claim, a plaintiff's obligation to

"provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (citing *Iqbal*, 556 U.S. at 663).

The Court's responsibility is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Liu v. Credit Suisse First Bos. Corp.* (*In re Initial Pub. Offering Sec. Litig.*), 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation makers and citation omitted). *See also Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999) (plaintiff need only allege, not prove, sufficient facts to survive a motion to dismiss). Dismissal is only warranted where it appears beyond doubt that the plaintiff can prove no sets of facts in support of her claim which would entitle her to relief. *See Maxwell Commun. Corp. Pub. Ltd. Co. v. Societe Generale (In re Maxwell Commun. Corp. Pub. Ltd. Co.)*, 93 F.3d 1036, 1044 (2d Cir. 1996). The Court considers "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir. 1993). The court should not consider documents that are not attached to the complaint or incorporated by reference.

Fraud claims must, however, "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." F. R. Civ. P. 9(b). *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987) (stating that "averments of fraud and mistake be pleaded with particularity"); *The*

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008) ("Although *scienter* may be pleaded generally, the pleader must 'allege facts that give rise to a strong inference of fraudulent intent.'") (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). However, "even the so-called relaxed standard does not *eliminate* the particularity requirement. . . the degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts." *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

## III.    DISCUSSION

Counts I, II, and III are constructive fraudulent transfer claims (under Bankruptcy Code §§ 544(b) and 550, and NYDCL §§ 273, 274, and 275).  Count IV is an intentional fraudulent transfer claim (under Bankruptcy Code §§ 544(b) and 550, and NYDCL § 276), and Count V is for attorneys' fees therefor (under Bankruptcy Code § 544(b) and NYDCL § 276-a).  Count VI is for unjust enrichment. Count VII is for prejudgment interest and attorneys' fees (under Bankruptcy Code § 550(a) and NYCPLR §§ 5001 and 5004).

For reasons explained below, the Court **GRANTS** the Motion as to Counts I, II, III, IV, V and VII, and **DENIES** the Motion as to Count VI.

### A.  The Court May Not Consider the Purported Board Resolution

CPRH relies on the Purported Board Resolution to argue for dismissal of the fraudulent transfer claims, contending that it amounted to "a three-party contract whereby the Debtor agreed to pay Barbera's rent" in exchange for Barbera agreeing to "forego his salary and provide additional stock in the event that the salary was not enough."  (Motion at 14.)  However, as the Trustee points out, the Court may not consider the Purported Board Resolution at this stage.

When deciding a motion to dismiss, courts may consider:

> (1) facts alleged in the complaint and documents attached to it or
> incorporated in it by reference, (2) documents 'integral' to the complaint
> and relied upon in it, even if not attached or incorporated by reference, (3)
> documents or information contained in [a] defendant's motion papers if
> plaintiff has knowledge or possession of the material and relied on it in
> framing the complaint, (4) public disclosure documents required by law to
> be, and that have been, filed with the Securities and Exchange Commission,
> and (5) facts of which judicial notice may properly be taken under Rule 201
> of the Federal Rules of Evidence.

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (citations omitted).

The Purported Board Resolution was not (1) attached to or incorporated in the Complaint, (2) integral to the Complaint, (3) relied on in framing the Complaint, (3) a publicly reported document, or (5) a document of which judicial notice may properly be taken.

CPRH maintains that the Purported Board Resolution should be considered, as it is "integral" to the allegations in the Complaint. (Reply at 1.) Specifically, CPRH argues that a document may be considered "integral" if it contains "obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." *Madhu*, 2023 WL 6214807, at *6 (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).) However, even *Madhu* recognizes that "even if a document is integral to the complaint, it must be clear on the record *that no dispute exists regarding the authenticity or accuracy* of the document." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (emphasis added).) So too for relevance. *Id.* Here, the Trustee "disputes the authenticity, accuracy and relevance of the Purported Board Resolution." (Objection at 3.) At the Hearing, counsel for CPRH was unable to provide any other authority supporting the inclusion of the Purported Board Resolution. Accordingly, at this stage, the Court cannot consider CPRH's arguments which rely on the Purported Board Resolution.

**B.  The Trustee Fails to Adequately Plead Constructive Fraudulent Transfers**

Counts I, II, and III seek to avoid the Transfers as constructively fraudulent under

sections 544(b) and 550 of the Bankruptcy Code, which allow for recovery under applicable

law—namely, NYDCL §§ 273, 274, and 275.

A transfer is deemed a constructively fraudulent conveyance under NYDCL §§ 273, 274

and 275, if (1) it is made without "fair consideration," *and* (2) one of the following conditions is

met:

> (i) the transferor is insolvent or will be rendered insolvent by the transfer in
> question, [NY]DCL § 273; (ii) the transferor is engaged in or is about to
> engage in a business transaction for which its remaining property constitutes
> unreasonably small capital, [NY]DCL § 274; or (iii) the transferor believes
> that it will incur debt beyond its ability to pay, [NY]DCL § 275.

*Gowan v. The Patriot Grp., LLC (In In re Dreier LLP)*, 452 B.R. 391, 441 (Bankr. S.D.N.Y.

2011) (citing *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d

43 (2d Cir. 2005)).

1.  <u>Fair Consideration</u>

The first necessary element of any constructive fraudulent transfer claim is lack of fair

consideration.  The Second Circuit has stated that "fair consideration" under the NYDCL

requires:

> (1) the transferee must convey property in exchange for the transfer, or the
>     transfer must discharge an antecedent debt;
> (2) what the transferee exchanges for the transfer must be of "fair
>     equivalent" value to the property transferred by the debtor; *and*
> (3) the transferee must make the exchange in "good faith."

*See Sharp,* 403 F.3d at 53–54 (emphasis added) (citing *HBE Leasing Corp. v. Frank,* 61 F.3d

1054, 1058–59 (2d Cir. 1995); *see also Ede v. Ede,* 193 A.D.2d 940, 941–42, 598 N.Y.S.2d 90,

92 (3d Dep't 1993) ("fair consideration" requires not only that the exchange be for equivalent

value, but also that the conveyance be made in good faith).  Because CPRH conveyed a

leasehold interest in exchange for the Transfers, the first element is satisfied. Thus, to ultimately prevail on the claim, the Trustee must prove that one of the other two elements is lacking.

At the motion to dismiss stage, the plaintiff "need only allege a lack of 'fair consideration' by pleading a lack of 'fair equivalent' value *or* a lack of good faith on the part of the transferee." *Dreier*, 452 B.R. at 443 (emphasis in original); *see also Geron v. Reifer (In re Eight-115 Associates, LLC)*, 650 B.R. 43, 55 (Bankr. S.D.N.Y. 2023). Thus, at the motion to dismiss stage, to support the first element of a constructive fraudulent transfer claim—a lack of fair consideration—the plaintiff need only plead *either* the transferee's lack of good faith *or* a lack of fair equivalent value.

Here, the Trustee alleges that there was no fair consideration because the Debtor did not receive anything in exchange for the Transfers. The Trustee does not specifically allege a lack of good faith on part of CPRH, but as discussed, he need only allege a lack of fair equivalent value to satisfy the fair consideration prong.

### a. The Trustee Has Alleged a Lack of Fair Equivalent Value

The Debtor did not receive anything in return for paying Barbera's rent. Thus, the Trustee argues, there was no fair equivalent value. (Objection at 7.) These facts are sufficient to plead a lack of fair equivalent value.

The Trustee argues that the lack of fair equivalent value means that he has successfully pleaded a constructive fraudulent transfer. (*Id.*) However, adequately pleading lack of "fair equivalent value" is only sufficient to establish a lack of "fair consideration." And lack of fair consideration, in turn, is only one of the two necessary elements of a constructive fraudulent transfer claim, along with one of the three "flavors" of insolvency.

Adequately pleading the lack of "fair equivalent value" at this stage satisfies the lack of "fair consideration" prong.  However, to survive a motion to dismiss, the Trustee must *also* plead that at the time of the Transfers, the Debtor was either (i) insolvent, (ii) had insufficient capital, or (iii) was incurring debts beyond its ability to pay.  The Trustee has recited these elements, but "a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 555.

### 2.  Count I: Insolvency Under NYDCL § 273

Insolvency is ordinarily a question of fact.  *See Lawson v. Ford Motor Co. (In re Roblin Indus.)*, 78 F.3d 30, 35 (2d Cir. 1996).  For a claim under NYCDL § 273, the Second Circuit recognizes a presumption of insolvency if the debtor (1) makes a voluntary transfer (2) for which it does not receive fair consideration, and (3) had outstanding debts at the time of the transfer. *Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934) (stating that "a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. . . if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.").  *See also Wilson v. Robinson*, 83 F.2d 397, 398 (2d Cir. 1936) ("Where a voluntary transfer is made when debts of the grantor are outstanding, the burden of going forward with proof of solvency is upon the transferee"); *Matter of Russo*, 1 B.R. 369, 379 (Bankr. E.D.N.Y. 1979) (stating that "a conveyance made by a grantor, without consideration, at a time when he is indebted to various creditors raises a presumption of his insolvency"); *In re Ventimiglia*, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007) (stating that "a voluntary conveyance made while a debtor is indebted to creditors is presumptively fraudulent").

The word "insolvent" appears for the first time on page 14 of 20 of the Complaint, in the heading of Count I.  (Complaint at 14.)  The only two other places it appears are in the recitation of the cause of action: "At the time that it made the Transfers, the Debtor was insolvent or

became insolvent as a result of the Transfers." (*Id.* ¶ 57).  This is an a conclusory, and therefore insufficient, allegation.  The Trustee argues the Debtor is presumed insolvent because it did not receive fair consideration for the Transfers.  (Objection at 8, citing *In re Khan*, No. 11-01520-ESS, 2014 WL 10474969 at *8–9 (E.D.N.Y. Dec. 24, 2014.)  However, *In re Khan* also recognizes the third necessary element to trigger the presumption: "If the party seeking to avoid a transfer that was made without fair consideration *demonstrates that a debtor was indebted at the time of the transfer*, the debtor is presumed to have been insolvent at that time."  *In re Khan*, WL 10474969 at *17 (emphasis added).  While the Trustee has adequately pleaded that the Debtor made a voluntary conveyance for which it did not receive fair consideration, he has not pleaded the third condition necessary to trigger the presumption of insolvency: namely, that the Debtor had outstanding debts to creditors at the time of the Transfers.

Accordingly, because the Trustee has failed to adequately plead the Debtor's insolvency and the presumption of insolvency is not triggered by the Complaint, the Motion to dismiss Count I is **GRANTED WITHOUT PREDJUDICE AND WITH LEAVE TO AMEND**.

### 3.  Count II: Insufficient Capital under NYDCL § 274

The elements necessary to plead a fraudulent conveyance with unreasonably small capital remaining are the same as for fraudulent conveyance by an insolvent, except the second element under NYDCL § 274 is that "the debtor was left with unreasonably small capital."  *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 666 n.2 (S.D.N.Y. 2012) (citing *In re Hydrogen, L.L.C*, 431 B.R. 337, 354 (Bankr. S.D.N.Y. 2010)).

"Unreasonably small capital" is not defined in the bankruptcy Code, but it is similarly a fact-intensive inquiry.  Key considerations include "the company's debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue;" the

17

reasonableness of the projections of management; the length of time a company survives

following a transaction;[3] and a company's ability to obtain financing. *Weisfelner v. Blavatnik (In*

*re Lyondell Chem. Co.)*, 567 B.R. 55, 110–111 (Bankr. S.D.N.Y. 2017), *aff'd*, 585 B.R. 41

(S.D.N.Y. 2018) (internal citation omitted). Unlike a claim under NYDCL § 273, "[n]o

presumptions are applicable with respect to the Trustee's claims that [the debtor] had

'unreasonably small capital;' it is the Trustee's burden to prove such contentions." *Geron v.*

*Craig (In re Direct Access Partners)*, LLC, 602 B.R. 495, 536 (Bankr. S.D.N.Y. 2019).

The Complaint does not allege any facts indicating insufficient capital, other than in the

recitation of the elements of the charge. (*See* Complaint ¶ 65.) The Trustee has thus failed to

adequately plead insufficiently small capital.

Accordingly, because the Trustee has failed to adequately plead that the Debtor was left

with insufficiently small capital, the Motion to dismiss Count II is **GRANTED WITHOUT**

**PREJUDICE AND WITH LEAVE TO AMEND**.

### 4. Count III: Inability to Pay Debts Under NYDCL § 275

The elements necessary to plead a fraudulent conveyance with unreasonably small capital

remaining are the same as for fraudulent conveyance by an insolvent, except the second element

under NYDCL § 275 is that "the debtor intended or believed that it would incur debts beyond its

ability to pay as the debts matured." *Paradigm BioDevices*, 842 F. Supp. at 666 n.2 (citing *In re*

*Hydrogen*, 431 B.R. at 354). "The 'ability to pay' test requires proof of the transferor's

subjective intent or belief that it will incur debt it cannot pay at maturity." *Tese-Milner v. Edidin*

---

[3]      While not applicable to fraudulent transfer claims, section 547(f) of the Bankruptcy Code provides a presumption of insolvency for the *90 days* prior to the petition date. In this case, the Debtors survived for over *four years* after the Transfers.

& *Assocs. (In re Operations NY LLC.)*, 490 B.R. 84, 99 (Bankr. S.D.N.Y. 2013) (citing *MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913 (S.D.N.Y. 1995).

Like the prior two counts, the Trustee alleges nothing about the Debtor's intent or belief about its ability to pay debts, other than in the recitation of the elements. (*See* Complaint ¶ 73.) As with Count II, there is also no presumption to invoke. *In re BICOM NY, LLC*, 633 B.R. 25, 51 (Bankr. S.D.N.Y. 2021) ("New York courts have not adopted any presumptions with regard to [NYDCL § 275] claims, and the burden of proof rests with the Trustee.").

Accordingly, because the Trustee has failed to adequately plead that the Debtor was incurring debts beyond its ability to pay, the Motion to dismiss Count III is **GRANTED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

### C. The Trustee Fails to Adequately Plead Intentional Fraudulent Transfer

Under section 276 of the NYDCL, "every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed at law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." NYDCL § 276. In a claim for intentional fraudulent transfer, the Trustee must plead the fraudulent intent of the *transferor*, not the transferee, to defraud creditors; "'mutual fraudulent intent' is not necessary." *Dreier*, 452 B.R. at 401. Additionally, the pleading must satisfy Rule 9(b).

However, that fraudulent intent must still be intent *to defraud creditors*. Though the transferor may have generated funds fraudulently, in spending those funds, the transferor is not necessarily acting to hinder, delay or defraud, creditors. In *Direct Access Partners*, the trustee, alleging intentional fraudulent transfers under NYDCL § 276, sought to avoid salary payments to employees made by a debtor who had engaged in extensive illegal activity. The court noted that

"illegal activity, standing alone, does not support a presumption that payments made by a business are made with an actual intent to hinder, delay or defraud the creditors of the business. . . . Criminal behavior in raising funds or in operating a business, while reprehensible, does not warrant a fraudulent conveyance claim unless the perpetrators of the crime intended that transfers of funds by the business would hinder, delay or defraud creditors." *Direct Access Partners*, 602 B.R. at 541.

The court in *Bos. Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1510 (1st Cir. 1987), discusses the scenario where "S & K, officers of Corporation C, obtain C's money through dishonest means (larceny, fraud, etc.) and use it to pay a debt that S & K owe B, a transferee who . . . *did not participate in* [the dishonesty]." *Id.* at 510 (emphasis in original). The court had "found no modern case (nor any reference in any modern case, treatise, or article to any case in the past 400 years) that has found a fraudulent conveyance in such circumstances. That is not surprising, for the fraud or dishonesty in this example concerns not S & K's transfer to B, but *the manner in which the original debt to C arose.*" *Id.* (emphasis in original). *See also Sharp Int'l*, 403 F.3d at 56 (finding plaintiff's allegations of fraud perpetrated by the transferor inadequate to support a claim for intentional fraudulent transfer, because the fraud "relates to the manner in which [the debtor] obtained new funding . . . not [the debtor's] subsequent payment of part of the proceeds to [the transferee]"); *Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Tech. Ltd.)*, 337 B.R. 791, 810 (Bankr. S.D.N.Y. 2005) (refusing to hold transferee liable on actual fraudulent conveyance claim despite allegations that transferor engaged in fraudulent activity).

Thus, to adequately plead a claim for actual fraudulent transfer under NYDCL § 276, the complaint must allege fraudulent intent *related to the transaction at issue*. Those allegations must be made with particularity to satisfy Rule 9(b). *Am. Tissue, Inc. v. Donaldson, Lufkin &*

*Jenrette Secs. Corp.,* 351 F. Supp. 2d 79, 106–07 (S.D.N.Y. 2004).  In assessing the circumstances, courts consider the "badges of fraud," which include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
> (6) the general chronology of the event and transactions under inquiry;
> (7) a questionable transfer not in the usual course of business; and
> (8) the secrecy, haste, or unusualness of the transaction.

*Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 643 (Bankr. S.D.N.Y. 2009).

Section 548(c) of the Bankruptcy Code provides a "good faith" affirmative defense to an otherwise avoidable transfer, whether actually or constructively fraudulent: "a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation."  11 U.S.C. § 548(c).

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  However, a plaintiff need not plead a defendant's bad faith (or lack of good faith) at the motion to dismiss stage.  *Dreier*, 452 B.R. at 425.

### 5.  Barbera's Other Fraudulent Activity Does Not Establish Requisite Intent

The Trustee has shown that Barbera was engaged in a massive fraud, and he argues that "every conveyance made and every obligation incurred with actual intent . . .  to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

21

(Objection at 9, citing *Actrade Fin.*, 337 B.R. at 808.)  However, as discussed above, fraud and

illegality in *obtaining* the funds does not support a finding that *spending* the funds was done with

intent to hinder, delay, or defraud creditors.  The Trustee "relies solely on an inapplicable

presumption of all-encompassing fraudulent intent," pleading facts that only "go to the way [the

debtor] was operated, to the detriment of *its own* lenders and investors."  *Stoebner v. Ritchie*

*Cap. Mgmt. LLC (In re Polaroid Corp.)*, 543 B.R. 888, 912 (Bankr. D. Minn.), *aff'd sub nom.*

*Stoebner v. Opportunity Fin., LLC*, 562 B.R. 368 (D. Minn. 2016), *aff'd*, 909 F.3d 219 (8th Cir.

2018) (emphasis in original).

Accordingly, the Motion to dismiss Count IV for intentional fraudulent conveyance is

**GRANTED**.  However, for the reasons explained below, that dismissal is without prejudice.

### 6.    Unalleged Badges of Fraud Are Present

Federal Rule of Civil Procedure 9(b), made applicable to these proceedings through

Bankruptcy Rule 7009, requires that claims of intentional fraudulent conveyance be pleaded with

particularity.  *See* FED. R. BANKR. P. 7009; FED. R. CIV. P. 9(b).  CPRH states that it entered into

a lease in the ordinary course of business, a "run of the mill" transaction, and the Complaint does

not contain any allegations that could apprise it of any alleged participation in Barbera's fraud.

(Motion at 2; Reply at 5.)  In its current form, Count IV fails because the Complaint did not raise

any badges of fraud related specifically to the Transfers.  However, as discussed during the

Hearing, the terms of the Lease provide a foothold for the Trustee to make such a claim.

The Lease required the *entire second year* to be paid in full, in cashier's checks.

(Complaint ¶ 47.)  At the Hearing, counsel for the Defendant was unsure whether CPRH

regularly entered into leases with similar terms (and counsel acknowledged that he had never

leased an apartment on similar terms).  Payment in full in advance for a second year of a

residential lease may be sufficiently unusual to make the entire transaction suspect.  And while it is not *unheard* of for a company to pay some living expenses for executives, this arrangement—by which the Debtor directly paid for several years of Barbera's rent—in combination with the odd Lease terms raises flags that implicate at least two *Saba* factors.  Specifically, the facts raise questions about the "unusualness" of the transaction and may support the inference that it was "a questionable transaction not in the usual course of business."  *Saba Enters.*, 421 B.R. at 643.  Indeed, the Motion itself concedes that the Transfers "may not have been 'in the usual course of business.'"  (*See* Motion at 19.)

However, the Complaint alleges none of these facts.  Therefore, the Motion is **GRANTED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

### D. Count V: Attorneys' Fees Under NYDCL § 276-a

Section 276-a of the NYDCL allows a trustee to recover attorneys' fees in an action seeking to set aside an intentional fraudulent transfer claim, "where such conveyance is found to have been made by the debtor and *received by the transferee with actual intent*, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." NYDCL § 276-a (emphasis added).  As stated above, Federal Rule of Civil Procedure 9(b) requires that claims of intentional fraud must be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b).  Here the Complaint does not allege that CPRH received Transfers with actual intent.  Therefore, the Motion to Dismiss Count V is **GRANTED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

**E.  The Record Does Not Unequivocally Require Dismissal of the Claim for Unjust Enrichment**

The elements needed to plead an unjust enrichment are "(1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011) (citing *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481 (2d Dept. 2004) and *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629–630 (3rd Dept. 2007)) (insertion in original). However, "[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972).

The Trustee argues that CPRH was "unjustly enriched" because the "Debtor made the Transfers to [CPRH], [CPRH] accepted the same while knowing that it was providing the Rental Apartment to Barbera and not the Debtor, [CPRH] was enriched at the expense of the Debtor." (Objection at 15.)

However, this analysis obfuscates the relevant inquiry.  If CPRH provided the Rental Apartment under the Lease *for its full two-year term*, it was not unjustly enriched.  The Trustee does not allege that the rent was exorbitant, the terms unfair, or in any way "off market" such that CPRH obtained more from the Debtor than it would have while leasing the Rental Apartment to anyone else.  Thus, Count VI turns on a straightforward factual question: did Barbera occupy the Rental Apartment for the full two years?  If he did not—and because the second year had been prepaid in full—CPRH would have been unjustly enriched.  If he did occupy the Rental Apartment for the full term, then CPRH provided the Rental Apartment in exchange for fair value, and it would be against equity and good conscience to order

24

disgorgement.  Neither party's pleadings indicate whether Barbera occupied the Rental

Apartment for the full term, nor could either party definitively confirm this fact at the Hearing.

Accordingly, because the facts are unclear on whether Barbera occupied the Rental

Apartment for the full Lease term, Count VI for unjust enrichment cannot be dismissed, and the

Motion is Count VI is **DENIED**.

### F.  Pre-Judgment Interest and Attorneys' Fees

Section 5001(a) of the NYCPLR provides that:

> (a) Interest shall be recovered upon a sum awarded because of a breach of
> performance of a contract, or because of an act or omission depriving or
> otherwise interfering with title to, or possession or enjoyment of, property,
> except that in an action of an equitable nature, interest and the rate and date
> from which it shall be computed shall be in the court's discretion.

NYCPRL § 5001(a).  Sections 5001(b) and 5001(c) speak to the date from which to compute

interest.  Section 5004(a) speaks to the rate of interest (9%, with some caveats).  NYCPRL §

5001(a).  Nowhere in either section are attorneys' fees mentioned, which CPRH correctly points

out.  (Motion at 22.)  The Trustee does not respond to this.  Accordingly, the Motion to Dismiss

Count VII with respect to attorneys' fees is **GRANTED**.

As CPRH also points out, awarding interest is not a standalone cause of action, but a

remedy that courts award when a plaintiff has been successful on a cause of action that supports

such an award.  "Courts applying § 5001(a) have without qualification awarded interest as a

matter of right whenever any tortious conduct causes pecuniary damage to tangible or intangible

property interests."  *Geltzer v. Artists Marketing Corp. (In re Cassandra Grp.)*, 338 B.R. 583,

600 (Bankr. S.D.N.Y. 2006).  Fraudulent conveyance is "but one species of tortious conduct for

which the Second Circuit has held that prejudgment interest is recoverable."  *Id.* (citing *Shamis v.*

*Ambassador Factors Corp.*, No. 95 Civ. 9818 (RWS), 2001 WL 25720, at \*6 (S.D.N.Y. Jan. 10, 2001).

In exercising discretion on whether to award prejudgment interest, courts in the Second Circuit consider the following factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *In re 1031 Tax Grp., LLC*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (citing *Wickham Cont. Co., Inc. v. Local Union No. 3, Int'l Bd. of Elec. Workers, AFL–CIO,* 955 F.2d 831, 833–34 (2d Cir. 1992)).

Because Count VII is not a standalone cause of action, the Motion to dismiss Count VII is **GRANTED**.  However, if the Trustee is successful in proving the claim of unjust enrichment, or (following a renewed motion) a claim for fraudulent transfer, the Court would then weigh the *Wickham* factors in considering whether to make such an award.

### G.  Double Recovery is Not a Concern

"It is well settled that until finally paid, litigants may look to multiple parties to recover the same loss." *Jones v. Brand (In re Belmonte)*, 551 B.R. 723, 732 (Bankr. E.D.N.Y. 2016) (citing *Fed. Ins. Co. v. PGG Realty, LLC,* 529 F. Supp. 2d 460, 463 (S.D.N.Y. 2008)).  The Trustee avers that the Debtor's estate is administratively insolvent.  (Objection at 19.)  The adversary proceeding against Barbera is currently stayed, and restitution payments will not be required until Barbera's release from prison, scheduled to occur sometime in 2028.  (*Id.* at 20.)  Thus, there is no imminent risk of double recovery.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Motion is **GRANTED** with respect to Counts I, II, and III (the constructive fraudulent transfer claims); Counts IV and V (intentional fraudulent transfer claim and attorneys' fees therefor); and Count VII (attorneys' fees and prejudgment interest). The Motion is **DENIED** with respect to Count VI (unjust enrichment).

Dated:    January 16, 2024
          New York, New York


                                     *Martin Glenn*
                                     _____
                                     MARTIN GLENN
                                     Chief United States Bankruptcy Judge